UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TENNY GARNER,<br><br>    Plaintiff,<br><br> v.<br><br><br>WELLS FARGO HOME MORTGAGE, INC., WELLS FARGO BANK, NATIONAL ASSOCIATION, and Does 1-50,<br><br>    Defendants. | Case No. 1:10-CV-266-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

The Court has before it (1) Defendant Wells Fargo Home Mortgage, Inc. and

Wells Fargo Bank National Association's Motion to Set Aside Clerk's Entry of Default

(Dkt. 26); and (2) Plaintiff Tenny Garner's Motion for Attorney Fees (Dkt. 14). In the

interest of avoiding further delay and because the Court conclusively finds that the

decisional process would not be significantly aided by oral argument, the Court will

resolve these motions without a hearing and vacate the hearing on the motion to set aside

default scheduled for July 11, 2011.

Having carefully reviewed the record, the Court will grant Wells Fargo's motion to

set aside default. But it will award Garner the attorney fees she incurred in preparing for

the default judgment hearing in the amount of $5,052.66. In addition, the Court will

award Garner the reasonable attorney fees she incurred in opposing Wells Fargo's motion

to set aside default.

## BACKGROUND

On May 27, 2010, Plaintiff Tenny Garner filed a Complaint alleging that

Defendants Wells Fargo Home Mortgage, Inc. and Wells Fargo Bank National

Association (Wells Fargo) terminated her employment in violation of the Family Medical

Leave Act. Garner also asserted state claims for unpaid wages, quantum meruit and

unjust enrichment. Garner did not serve the Complaint immediately, but Wells Fargo's

in-house counsel apparently obtained a copy of the Complaint and left a voicemail for

Plaintiff's counsel in June 2010. *Voicemail left by Joan Harris on June 21,2010*, Dkt. 22,

Exhibit at 2 of 22. Between June and September 2010, counsel for the parties spoke a

few times on the phone and exchanged several voicemails about settling the case.

Because the 120-day time period for serving the Complaint was approaching,

Garner served Wells Fargo on September 23, 2010. Wells Fargo never filed an answer.

Nor did it file a notice of appearance or seek an extension of time to answer the

Complaint.

The Clerk entered default on November 12, 2010. The Court then set a hearing on

Garner's motion for default judgment for January 27, 2010 to determine damages. A day

before the hearing, Wells Fargo notified the Court that it intended to move to set aside the

Clerk's Entry of Default. Rather than potentially waste the Court and parties' time, the

Court vacated the default judgment hearing, but invited Garner to move for attorney fees

she incurred in preparing for the hearing. Wells Fargo now moves to set aside default.

## LEGAL STANDARD

"The court may set aside an entry of default for good cause .... " Fed.R.Civ.P.

55(c). The "good cause" standard that governs vacating an entry of default under Rule

55(c) is the same standard that governs vacating a default judgment under Rule 60(b).

*See TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir.2001). The good

cause analysis considers three factors:

> (1) whether Wells Fargo engaged in culpable conduct that led to the default;
> (2) whether Wells Fargo has a meritorious defense; or (3) whether
> reopening the default judgment would prejudice Garner.

*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091

(9th Cir. 2010) (citing *Franchise Holding II, LLC v. Huntington Rests. Group, Inc.*, 375

F.3d 922, 925–26 (9th Cir.2004)). As these factors are disjunctive, the district court may

deny the motion if any of the three factors are true. *American Ass'n of Naturopathic*

*Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000).

The party seeking relief from the entry of default bears the burden of showing that

these factors favor such relief. *See Franchise Holding II*, 375 F.3d at 926. In considering

these good cause factors, however, the Ninth Circuit instructs that the court is to be

guided by the underlying policy concern that "'judgment by default is a drastic step

appropriate only in extreme circumstances; a case should, whenever possible, be decided

on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

## ANALYSIS

### 1.     Motion to Set Aside Default Judgment

Wells Fargo contends that the Clerk's Entry of Default should be set aside for good cause because "(1) Wells Fargo's failure to file an Answer was based upon its reasonable belief that no formal pleading was required in light of the parties' ongoing settlement negotiations; (2) Wells Fargo has meritorious defenses in that it terminated plaintiff after she admitted to two acts of forging customer loan documents; and (3) setting aside the Entry of Default (entered November 12, 2010) will not prejudice plaintiff in any way." *Wells Fargo's Br.* at 2, Dkt. 27.

#### A.     *Culpable Conduct*

There appears to be some disagreement within the Ninth Circuit as to the correct standard for evaluating the "culpable conduct" factor for purposes of setting aside a default. One line of cases holds that "a defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *TCI Group*, 244 F.3d at 697 (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir.1988)). These cases indicate that "[n]eglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process" is not intentional and should not necessarily be considered culpable conduct. *TCI Group*, 244 F.3d at 697-98. Rather, a defendant's conduct should

be deemed culpable when "there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* at 698.

A second line of cases, however, suggests that if a defendant has received actual or constructive notice of an action and fails to answer, this conduct alone is indicative of culpability. *See Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 926 (9th Cir.2004); *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 690 (9th Cir.1988). The Ninth Circuit has recently clarified that this standard for culpability is inappropriate where the defaulting party is not represented by counsel or is otherwise not legally sophisticated. *Mesle*, 615 F.3d 1093. The Ninth Circuit also suggested that the *Franchise Holding II* standard is "not the ordinary standard for Rule 55(c) and 60(b) motions" and that such an approach may not be consistent with the Supreme Court's interpretation of "excusable neglect" in *Pioneer Investment Services Co. v. Brunswick Associates Ltd.*, 507 U.S. 380 (1993). *Mesle*, 615 F.3d 1092-93. Nonetheless, the Ninth Circuit did not reject *Franchise Holding II*, but instead limited the application of its more stringent standard. Attempting to reconcile the two lines of cases, the Ninth Circuit stated that "[w]hen considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, intentionality." *Id.* (emphasis added)

Here, Wells Fargo is a legally sophisticated entity. Thus, Mesle appears to grant this Court discretion to assume culpability based solely on Defendant's failure to answer. However, in keeping with the policy to decide cases on their merits and as explained

further below, the Court declines to assume Wells Fargo's culpability based solely on its

failure to anser.

Acting through counsel, Wells Fargo argues that the exchange of several

settlement offers and counteroffers between Plaintiff's counsel and Wells Fargo's in-

house counsel somehow negated Wells Fargo's obligation to file an answer. But the

record demonstrates Wells Fargo's in-house counsel, with whom Plaintiff's counsel had

been conferring about settlement, knew the Complaint had been served. Presumably,

Wells Fargo, a legally sophisticated entity with multiple in-house attorneys and access to

outside counsel, also understood the dangers of failing to file an answer. *Direct Mail

Specialists, Inc. v. Eclat Computerized Tech., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988)

(upholding the district court's refusal to vacate a default judgment because defendant's

president, "as a lawyer, was presumably well aware of the dangers of ignoring service of

process").

Wells Fargo responds that "a default is unwarranted here because plaintiff's

counsel had the power to avoid this situation by simply informing defendants of her

decision to end settlement negotiations, require an answer, or pursue a default." *Wells

Fargo's Reply Br.* at 2, Dkt. 42. This argument, however, ignores that Wells Fargo too

had the power to avoid this situation by simply filing an answer when due. At the very

least, counsel for Wells Fargo could have filed a notice of appearance or sought an

extension of time to file an answer. The service of the Complaint, without an express

agreement from Plaintiff's counsel to suspend litigation or extend Well's Fargo's time to

answer, should have signaled to Wells Fargo that Garner intended to actively pursue

litigation. Given that Wells Fargo is a legally sophisticated entity, Wells Fargo's

"understanding" of Plaintiff's counsel's intentions does not exculpate Wells Fargo in the

face of the clear requirement that an answer be filed within 21 days of service.

Wells Fargo presents a weak case, then, for setting aside the default on the basis of

its own conduct. Certainly, Defendant's in-house and outside counsel should have been

aware of the consequences of failing to answer in a timely manner. It appears, however,

that its failure to answer resulted from mere negligence or inadvertence, rather than an

attempt to manipulate the legal process or take advantage of Plaintiff. *See Pioneer*

*Investment*, 507 U.S. 380, 394-95 (1993) (noting that excusable neglect encompasses

situations in which the failure to comply with a filing deadline is attributed to

negligence).

Wells Fargo has not attempted to avoid service or otherwise thwart Garner's

attempt to litigate her claims. *See Mesle*, 615 F.3d at 1094 (noting culpable conduct may

include attempts to avoid service in order to thwart attempts to bring suit). Rather, Wells

Fargo appeared promptly after learning of the default and now appears quite willing to

litigate the case. Thus, particularly given the more lenient standard applied to Rule 55(c)

motions in which default judgment has not been entered, the Court does not believe that

Wells Fargo's conduct should be considered culpable.

### B.     *Meritorious Defenses*

A party seeking to vacate a default judgment must present specific facts that would

constitute a defense.  But the burden on a party seeking to vacate a default judgment is

not extraordinarily heavy."  *Mesle*, 615 F.3d 1094 (quoting *TCI Group*, 244 F.3d at 700).

Rather, the defendant satisfies the meritorious defense requirement if it alleges sufficient

facts that, if true, would constitute a defense.  *Id.* Whether or not those allegations are true

is not determined by the court upon the motion to set aside the default, but would be the

subject of later litigation.  *Id.*

Wells Fargo satisfies the meritorious defenses requirements.  Wells Fargo

maintains that it terminated Garner not for taking FMLA leave, but rather because Garner

allegedly "committed at least two dishonest and fraudulent acts."  *Wells Fargo's Br.* 17,

Dkt.  27.  Wells Fargo also alleges that Garner's remaining claims fail because her

purported misconduct made her ineligible to receive the commissions at issue.  These

allegations, if true, could constitute a defense.  Accordingly, this factor supports setting

aside the default.

## C.  *Prejudice to Plaintiff*

"To be prejudicial, the setting aside of a judgment must result in greater harm than

simply delaying resolution of the case" or "being forced to litigate on the merits." *TCI

Group*, 244 F.3d at 701; *accord Mesle*, 615 F.3d 1094.  Rather, "[t]he standard is whether

[the plaintiff's] ability to pursue his claim will be hindered." *Falk*, 739 F.2d at 463.

Garner argues that she has suffered from the delay caused by Wells Fargo's failure

to answer because certain evidence has been lost.  Specifically, Garner argues that (1)

customer loan applications have been destroyed, (2) Garner's former supervisor is no

longer available; and (3) Garner's husband is no longer available to testify due to illness.

Wells Fargo responds that Garner mistakes the availability or import of each type of

purported evidence.[1]  First, Garner's supervisor is apparently available.  Second, it does

not seem the customer loan applications are necessary to calculate the commissions

Garner alleges she is owed.  And finally, the fact Garner's husband is no longer available

to testify is very unfortunate, but this cannot be attributed to Wells Fargo's failure to file a

timely answer and his unavailability will not prevent Garner from pursuing her claims.

Moreover, default judgment has not been entered, and Garner would be required to

proceed to hearing anyway to establish the elements of her claims and damages before

obtaining default judgment.  For these reasons, the Court does not find that the relatively

short delay here would prejudice Garner.

### D.      *Setting Aside the Entry of Default is Warranted*

Based on the above analysis, the Court concludes that none of the three "good

cause" factors justifies refusing to set aside the entry of default.  As noted above, the

Ninth Circuit has emphasized that "judgment by default is a drastic step appropriate only

in extreme circumstances" and instructed district courts not to ignore its "oft stated

commitment to deciding cases on the merits whenever possible."  *Mesle*, 615 F.3d at

---

[1] Garner has moved to strike the Second Declaration of Joan Harris, Declaration of Christa Gach and Jeffrey Grutta and Christa Gach, which Wells Fargo attached to its reply brief in support of its motion to set aside default.  Garner argues affidavits should be included in the original motion.  This is normally true.  But  the information contained in Ms.  Gach and Mr. Grutta's affidavits responds to new issues raised by Garner in her response.  For this reason, the Court will consider them  as necessary.

1091. Considering this instruction and the more liberal standard applied to Rule 55(c)

motions, the Court finds that Wells Fargo's motion to set aside the entry of default must

be granted.  However, Wells Fargo is advised that the Court expects it to strictly comply

with all further deadlines, orders, and rules applicable to this action.  The Court further

directs Wells Fargo to file an answer within the 10 days from entry of this decision.

## 2.    Motion for Attorney Fees

### A.    *Fee Award*

After the Court granted Wells Fargo's eleventh-hour request to vacate the default

judgment hearing, the Court invited Garner to file a motion for attorney fees she incurred

in preparing for the vacated hearing.  Wells Fargo, however, opposes the motion,

contending that it "appeared" by engaging in settlement negotiations with Garner, and

therefore Garner was required to provide Wells Fargo with notice seven days prior to the

default judgment hearing, which Garner did not do.  *See*  Fed. R. Civ. P. 55(b)(2) ("If the

party against whom a default judgment is sought has appeared personally or by a

representative, that party or its representative must be served with written notice of the

application at least 7 days before the hearing."); *see also* Fed. R. Civ. P. 5(b).

Wells Fargo correctly notes that "[t]he failure to provide 55(b)(2) notice, if the

notice is required, is a serious procedural irregularity that usually justifies setting aside a

default judgment or reversing for the failure to do so."  *Wilson v. Moore and Assocs., Inc*.,

564 F.2d 366, 368 (9th Cir.1977).  But  notice is only required where the party has made

an appearance.  An "appearance" generally requires a presentation or submission to the

court where the lawsuit is pending. 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2686 at 430. The Ninth Circuit, however, has acknowledged that in limited situations informal contacts have sufficed to constitute an appearance when the party in default has thereby demonstrated a clear purpose to defend the suit. *Wilson*, 564 F.2d at 368.

The record shows that Wells Fargo never formally appeared. At issue here then is whether Wells Fargo's informal contacts with Garner constitute sufficient contacts to demonstrate a clear intention to defend the suit, such that these contacts may be deemed an "appearance" for purposes of Rule 55(b)(2).

Wells Fargo relies heavily on a decision from the D.C. Circuit to support its argument that it "appeared" in this settlement by engaging in settlement negotiations with Garner. *See e.g., H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 692 (D.C.Cir. 1970). In *Livermore*, attorneys for the parties exchanged letters discussing some settlement proposals, a conference was proposed, telephone discussions were held – all of which occurred after the complaint was served but before the default judgment was obtained. In contrast, in *Direct Mail*, the Ninth Circuit declined to find that informal contacts between the parties constituted an "appearance" when the only settlement negotiations occurred prior to and on the day that the plaintiff served the complaint and summons on the defendant.[2] 840 F.2d at 690.

---

[2] The Court does not condone Garner's failure to notify Wells Fargo of the motion for default judgment prior to January 2011. Professionalism would counsel that Garner provide such notice.

The Court believes that this case more closely parallels *Direct Mail* than *Livermore*. The parties spend much time arguing over how many phone calls were made between Plaintiff's counsel and Wells Fargo's in-house counsel, the duration of these calls, and the content of these communications. It is undisputed, however, that counsel for the parties had only one discussion about settlement after the Complaint was served. This conversation took place seven days after the Complaint was served and counsel did not speak again until January 2011. All other direct exchanges between the parties, with the exception of this one telephone conversation, occurred *before* the Complaint was served. This distinguishes Wells Fargo's situation from that present in *Livermore*. Thus, Wells Fargo cannot claim Garner improperly pursued default and then failed to notify Wells Fargo of the default judgment hearing because it "appeared" in the action. For this reason, the Court finds Garner should be awarded costs and fees incurred in preparation of the vacated default judgment hearing.

**B.**      ***Reasonableness of Requested Fees***

Garner requests fees for the work conducted by her attorney, Cynthia Wooley, at a rate of $300 per hour, and Ms. Wooley's paralegal, Kathleen D. Lee, at the rate of $100 per hour. The total amount Garner has requested for fees and costs is $6,372.11.

To calculate attorney fees, courts "multiply [] the number of hours reasonably spent on the litigation by a reasonable hourly rate." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (citations and internal quotations omitted). A "strong presumption" exists that the lodestar figure represents a "reasonable fee," and therefore, it

should only be enhanced or reduced in "rare and exceptional cases." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (internal quotations omitted).  Wells Fargo argues that the Court the fee request is not reasonable because it includes hours that are excessive, redundant, or otherwise unnecessary.

First, Wells Fargo faults Garner for block billing.  It is not an abuse of discretion for a district court to reduce hours billed in block format because block billing can make it more difficult to determine how much time was spent on a particular task.  *See Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).  However, counsel "is not required to record in great detail how each minute of its time was expended." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  Here, the Court will not impose an across-the-board reduction for Plaintiff's counsel's block billing.  Plaintiff's counsels time records were sufficiently detailed to ascertain the reasonableness of the time expended.

In addition, the Court overrules Wells Fargo's objections to the 3.5 hours Plaintiff's counsel spent drafting her client's affidavit.  Plaintiff counsel represents that she intended to use the affidavit at the hearing, but the hearing never happened – which is why she never produced it or relied upon it.  This is enough to justify the time spent preparing the affidavit.   Also, the Court declines to exclude the hours Plaintiff's counsel spent preparing for the hearing between January 24 and January 26, 2011.  Wells Fargo argues that none of this work would have been "necessary" had Garner served her Motion for Default Judgment on Harris within seven days of the hearing.  The Court, however, has found such notice, while preferred, was not legally required.

But the Court agrees with Wells Fargo that the time spent on exhibits appears excessive.  Plaintiff's counsel reports spending close to 9 hours speaking to her client and preparing the hearing exhibits.  Her paralegal reports spending an additional 9.5 hours preparing these same exhibits.  While the Court understands that Garner intended to introduce the exhibits at the hearing and therefore some time spent preparing those exhibits was necessary, but Plaintiff's counsel fails to explain why both she and her paralegal needed to spend nearly 20 hours preparing the same exhibits.  Because Garner failed to meet her burden of submitting evidence to support the hours documented, the Court will deduct three hours from the time spent by Plaintiff's counsel on preparing exhibits and 3 hours from the time spent by the paralegal.

Having reduced the requested fee amount by 3 hours billed at a rate of $300 per/hour and another 3 hours billed at a rate of $100 and subtracting the cost entries for mileage to Boise and research on a Deed of Trust in Valley Count, the Court will award Garner attorney fees and costs in the amount of $5,052.66.

**C.**      ***Award of Fees for Time Spent Related to Motion to Set Aside Default***

And while the Court has found that the Clerk's Entry of Default should be set aside because of the policy favoring deciding cases on their merits, the Court will also award Garner any reasonable fees she incurred in opposing the motion to set aside default.  As noted above, Wells Fargo could have avoided the entry of default against it by simply filing a notice of appearance.  Plaintiff's counsel shall submit an affidavit detailing all reasonable costs and fees incurred in opposing Wells Fargo's motion to set

aside the Clerk's Entry of Default.

## ORDER

**IT IS ORDERED that**:

1.  Defendant Wells Fargo Home Mortgage, Inc. and Wells Fargo Bank National Association's Motion to Set Aside Clerk's Entry of Default (Dkt. 26) is GRANTED. The hearing on this Motion set for July 11, 2011 is VACATED.

2.  Plaintiff Tenny Garner's Motion for Default Judgment (Dkt. 6) is denied as MOOT.

3.  Plaintiff Tenny Garner's Motion to Strike Declaration of Katie Bopp (Dkt. 32) is denied as MOOT.

4.  Plaintiff Tenny Garner's Motion to Strike Second Declaration of Leah Lively, Second Declaration of Joan Harris, Declaration of Christa Gach and Jeffrey Grutta and Christa Gach in support of Defendants' Motion to Set Aside Default (Dkt. 46) is DENIED.

3.  Plaintiff Tenny Garner's Motion for Attorney Fees (Dkt. 14) is GRANTED. Garner shall be awarded attorney fees and costs in the amount of $5,052.66. In addition, Garner shall submit an affidavit detailing fees incurred opposing the motion to set aside default.

4.  Defendant Wells Fargo Home Mortgage, Inc. and Wells Fargo Bank National Association's shall file their answer within 10 from the date of this Order. In anticipation of an answer being filed within 10 days from the date of this Order, a time and date for a Rule 16 case management conference shall be set so as to avoid further delay.



DATED: **June 9, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge